UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

OTTAVIO LAVAGGI,        :     No. 04-CV-5068 (TPG)

            :

        Plaintiff.    :     <u>ECF CASE</u>

            :

    v.            :

            :

REPUBLIC OF ARGENTINA,     :

            :

      Defendant.    :

------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS ..................................................................................2

III.    ARGUMENT.......................................................................................................4

      A.     Class Certification Standards.................................................................4

      B.     Because Mr. Lavaggi Meets the Requirements of Fed. R. Civ. P. 23(a), Class Certification Is Proper ...................................................................4

            1.     Class members are far too numerous for joinder ....................................4

            2.     Class members' claims share common issues of fact and law...............5

            3.     Mr. Lavaggi's claims are typical of those of other Class members.......9

            4.     Mr. Lavaggi is an adequate representative with experienced class action counsel...........................................................................11

      C.     Because Mr. Lavaggi Meets the Requirements of Fed. R. Civ. P. 23(b), Certification Is Proper........................................................................12

            1.     Common questions of fact and law predominate over individual issues...............................................................................12

            2.     Class action is superior for adjudicating this dispute, particularly since Class members are scattered across the globe.........13

IV.    CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*In Re "Agent Orange" Prod. Liab. Litig.*,
  818 F.2d 145 (2d Cir. 1987)..................................................................................7, 11, 15

*Applestein TTEE FBO D.C.A. Grantor Trust v. Republic of Argentina*,
  2003 U.S. Dist. Lexis 20922 (S.D.N.Y. Nov. 20, 2003) .....................................................3

*Bolanos v. Norwegian Cruise Lines Ltd.*,
  212 F.R.D. 144 (S.D.N.Y. 2002) ................................................................................13, 14

*Caridad v. Metro-North Commuter R.R.*,
  191 F.3d 283 (2d Cir. 1999)..............................................................................................4

*Cromer Fin. Ltd. v. Berger*,
  205 F.R.D. 113 (S.D.N.Y. 2001) .................................................................................5, 14

*David v. Showtime/Movie Channel. Inc.*,
  697 F. Supp. 752 (S.D.N.Y. 1988) ...................................................................................10

*Dornberger v. Metropolitan Life Ins. Co.*,
  182 F.R.D. 72 (S.D.N.Y. 1998) ................................................................................. *passim*

*In re Drexel Burnham Lambert Group*,
  960 F.2d 285 (2d Cir. 1992)......................................................................................10, 11

*Fogarazzo v. Lehman Bros.*,
  232 F.R.D. 176 (S.D.N.Y. 2005) ......................................................................................4

*In re Frontier Ins. Group Secs. Litig.*,
  172 F.R.D. 31 (E.D.N.Y. 1997)......................................................................................10

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  114 F.R.D. 48 (S.D.N.Y. 1987) ....................................................................................5, 6

*H.W. Urban GmbH v. Republic of Argentina*,
  2003 U.S. Dist. Lexis 23363 (S.D.N.Y. Dec. 30. 2003).............................................10. 13

*H.W. Urban GmbH v. Republic of Argentina*,
  2006 U.S. Dist. Lexis 9668 (S.D.N.Y. Mar. 9, 2006).........................................................3

*Heerwagen v. Clear Channel Communs.*,
    435 F.3d 219 (2d Cir. 2006)....................................................................................................4

*Krueger v. New York Tel. Co.*,
    163 F.R.D. 433 (S.D.N.Y. 1995) ...............................................................................6, 7, 10

*In re Magnetic Audiotape Antitrust Litig.*,
    2001 U.S. Dist. Lexis 7303 (S.D.N.Y. June 6, 2001) ...............................................4, 10, 11

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997).....................................................................................5, 6, 11

*Maywalt v. Parker & Parsley Petroleum Co.*,
    147 F.R.D. 51 (S.D.N.Y. 1994) .....................................................................................6, 14

*In re Nassau County Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)..................................................................................13, 14, 15

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    191 F.R.D. 369 (S.D.N.Y. 2000) ............................................................................10, 11, 12

*Philips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).........................................................................................................11

*Ray M. v. Bd. of Educ.*,
    884 F. Supp. 696 (E.D.N.Y. 1995) ....................................................................................6

*Robinson v. Metro-North Commuter R.R.*,
    267 F.3d 147 (2d Cir. 2001)..............................................................................................9

*Selby v. Principal Mut. Life Ins. Co.*,
    197 F.R.D. 48 (S.D.N.Y. 2000) ..........................................................................................6

*In re Towers Fin. Corp. Noteholders Litig.*,
    177 F.R.D. 167 (S.D.N.Y. 1997) .....................................................................................13

*In re Visa Check/Mastermoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)............................................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..............................................................................................10

001783-11 137701 V2

*Weigmann v. Glorious Food,*
  169 F.R.D. 280 (S.D.N.Y. 1996) ...................................................................5, 11

## MISCELLANEOUS

Hal S. Scott, *Sovereign Debt Default: Cry For The United States, Not Argentina*
  (Wash. Legal Found., Sept. 2006) ......................................................................2, 3

*Earth to Argentina*, WALL ST. J., Mar. 4, 2004 .................................................................2

*The IMF Blinks*, WALL ST. J., Mar. 11, 2004..................................................................2

# I. INTRODUCTION

Plaintiff Ottavio Lavaggi submits this memorandum of law in support of his motion for certification of two Classes of persons who own beneficial interests in bonds issued by the Republic of Argentina and who have suffered damages as a result of Argentina's default in December, 2001.[1]

The first Class consists of owners of beneficial interests in bonds denominated in United States dollars with ISIN US040114BC38, a coupon rate of 12.125 percent, and a maturity date of February 25, 2019 ("U.S. Bonds"). By their terms, these bonds are subject to New York law. The second Class consists of (a) owners of beneficial interests in bonds denominated in Japanese Yen with ISIN XS0100354066, a coupon rate of 3.5 percent, and a maturity date of 2009 ("Japanese Bonds"); and (b) owners of beneficial interests in bonds denominated in British Pounds with ISIN XS0077243730, a coupon rate of 10 percent, and a maturity date of June 25, 2007 ("British Bonds"). By their terms, both the Japanese Bonds and the British Bonds are subject to British law. Both Classes are limited to persons who continuously own beneficial interests in the U.S. Bonds, Japanese Bonds, and British Bonds from the date of class certification until the date of final judgment in the district court.

This Court has certified nine or more classes against Argentina on other bond issues for the same default, moratorium, and ongoing breach of contract that are at issue in this motion. *Castro v. Republic of Argentina*, No. 04-CV-00506 (S.D.N.Y. Mar. 31, 2005); *Seijas v. Republic of Argentina*, No. 04-CV-00401 (S.D.N.Y. Mar. 31, 2005); *Azza v. Republic of Argentina*, No. 04-CV-01085 (S.D.N.Y. Mar. 31, 2005); *Chorny v. Republic of Argentina*, No. 04-CV-02118 (S.D.N.Y. Mar. 31, 2005); *Hickory Secs. Ltd. v. Republic of Argentina*, No. 04-CV-00936 (S.D.N.Y. Mar. 31, 2005); *Pucelli v. Republic of Argentina*, 04-CV-02117 (S.D.N.Y. Mar. 31,

---

[1] Alternatively, the Court may exercise its discretion to certify three different Classes, one for each bond.

2005); *Azza v. Republic of Argentina*, No. 04-CV-00937 (S.D.N.Y. Mar. 31, 2005); *Seijas v. Republic of Argentina*, No. 04-CV-00400 (S.D.N.Y. Mar. 31, 2005); *H.W. Urban GmbH v. Argentina*, No. 02-CV-05699 (S.D.N.Y. Feb. 17, 2004).

Mr. Lavaggi now moves this Court to: certify the two classes defined above; appoint Mr. Lavaggi as class representative; and appoint Hagens Berman Sobol Shapiro LLP as lead counsel in this action.

## II.    STATEMENT OF FACTS

Plaintiff Ottavio Lavaggi owns beneficial interests in bonds issued by Argentina. *See* Declaration of Robert Gaudet, Jr. ("Gaudet Decl."), Ex. A (letter confirming ownership of British Bonds and U.S. Bonds), and Ex. B (letter confirming ownership of Japanese Bonds). He filed this suit to recover principal and interest due on his bonds. Am. Compl. (Dkt. No. 10).

In December, 2001, Argentina declared a moratorium on the payment of its debt obligations. This moratorium became known as "the largest sovereign default in history." Hal S. Scott, *Sovereign Debt Default: Cry For The United States, Not Argentina*, at 2 (Wash. Legal Found., Sept. 2006). Ever since, Argentina has not provided means for Mr. Lavaggi or Class members to receive full payment on their bonds. Argentina has been called a "deadbeat nation" for breaking its contractual promises to bondholders around the globe. *Earth to Argentina*, WALL ST. J., Mar. 4, 2004, at A8 ("Argentina is a rare deadbeat"); *The IMF Blinks*, WALL ST. J., Mar. 11, 2004, at A16. Investors "made the mistake" of placing their trust in Argentina by purchasing bonds. *Earth to Argentina*, at A8 ("These bondholders are hardly all global fat cats. They include German hausfraus, Italian pensioners and Japanese farmers who made the mistake of trusting Argentine government promises").

In December 2004, Argentina offered 25 to 29 cents on the dollar to bondholders if they would relinquish their claims. Scott, *Sovereign Debt Default*, at 3. In short, Argentina asked

-2-

bondholders to take a "haircut," accepting new bonds with lesser value in exchange for surrendering their legally valid claims under old bonds. *Id.* The low level of Argentina's settlement offer was unprecedented. In 20 other sovereign debt restructurings since 1990, nations had offered 64 percent of the amount due to bondholders but Argentina offered 25 to 29 percent. *Id.* Moreover, Argentina did not provide an opportunity for a counter-offer: "The terms of the exchange were basically dictated unilaterally by Argentina, without any good faith negotiations with creditors." *Id.* at 3-4. Because they feared that Argentina's legal obligations would not be enforced at all, roughly 76 percent of bondholders accepted Argentina's stingy restructuring offer and, thereby, accepted a fraction of what they were owed. *Id.* at 4.

Roughly 24 percent of bondholders – including Mr. Lavaggi – rejected Argentina's inadequate settlement offer. Some brought legal action in courts in the United States, Germany, and Italy. This Court has granted summary judgment to individual plaintiffs (*Applestein TTEE FBO D.C.A. Grantor Trust v. Republic of Argentina*, 2003 U.S. Dist. Lexis 20922 (S.D.N.Y. Nov. 20, 2003); *EM Ltd. v. Republic of Argentina*, No. 03-CV-02507 (S.D.N.Y. filed Sept. 12, 2003); *Latinburg. S.A. v. Republic of Argentina*, No. 03-CV-08528 (S.D.N.Y. filed May 24, 2004); *Mazzini v. Republic of Argentina*, No. 03-CV-08120 (S.D.N.Y. filed Mar. 31, 2005)) and has granted partial summary judgment as to liability for a certified class concerning two different Argentine bonds (*H.W. Urban GmbH v. Republic of Argentina*, 2006 U.S. Dist. Lexis 9668 (S.D.N.Y. Mar. 9, 2006)).

Because Argentina has steadfastly refused to make good on its promise to repay investors, Mr. Lavaggi filed this suit to enforce Argentina's legal obligations. This Court denied Argentina's motion to dismiss in connection with Mr. Lavaggi's U.S. Bonds, British Bonds, and Japanese Bonds. On behalf of investors, Mr. Lavaggi now seeks certification of two classes on

-3-

behalf of those who own beneficial interests in the U.S. Bonds, Japanese Bonds, and British Bonds.

## III.   ARGUMENT

### A.   Class Certification Standards

Plaintiff "bears the burden of demonstrating numerosity, commonality, typicality, and adequacy." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999). "Nevertheless, a motion for class certification is not an occasion for examination of the merits of the case." *Id. See also Heerwagen v. Clear Channel Communs.*, 435 F.3d 219, 232 (2d Cir. 2006) (a district court is prohibited from "weighing evidence in connection with Rule 23 determinations to the extent those determinations are effectively identical to merits issues"). Further, the "Second Circuit requires a 'liberal' construction of Rule 23 of the Federal Rules of Civil Procedure." *Fogarazzo v. Lehman Bros.*, 232 F.R.D. 176, 178 (S.D.N.Y. 2005).

### B.   Because Mr. Lavaggi Meets the Requirements of Fed. R. Civ. P. 23(a), Class Certification Is Proper

#### 1.   Class members are far too numerous for joinder

Because Mr. Lavaggi's Classes consist of as many as "one million investors or more" (see Am. Compl., ¶ 14(a)), Class members are "so numerous that joinder of all members is impracticable" (Fed. R. Civ. P. 23(a)(1)). *In re Magnetic Audiotape Antitrust Litig.*, 2001 U.S. Dist. Lexis 7303, at *6 (S.D.N.Y. June 6, 2001) ("450 entities ... is more than enough to satisfy the numerosity requirement"); *Dornberger v. Metropolitan Life Ins. Co.*, 182 F.R.D. 72, 77 (S.D.N.Y. 1998) ("the threshold for impracticability of joinder seems to be around forty, a requirement which has been easily satisfied here") (citations omitted).

There are thousands of owners of beneficial interests in the U.S. Bonds, Japanese Bonds, and British Bonds. According to unofficial figures released by Argentina after the exchange

offer, the current outstanding amount owed by Argentina to Plaintiff and Class members who have beneficial interests in the U.S. Bonds is roughly $97,419,000. The current outstanding amount owed to Plaintiff and Class members who have beneficial interests in the Japanese Bonds is roughly 2,984,000,000 Yen or, at today's exchange rate, roughly $25,226,140.10. *See* Yahoo! Finance, *available at* http://finance.yahoo.com (last viewed on Nov. 6, 2006) (exchange rate). The current outstanding amount owed to Plaintiff and Class members who have beneficial interests in the British Bonds is roughly 50,745,000 £ or, at today's exchange rate, roughly $96,273,334.77. *See* Yahoo! Finance, *available at* http://finance.yahoo.com (last viewed on Nov. 6, 2006) (exchange rate). These three bonds account for roughly $218,918,474.87 – excluding compound interest – owed by Argentina to Plaintiff and Class members.[2] Moreover, "[t]he exact number and identity of class members ... can be ascertained at a later date by examining [Argentina's] records." *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 51 (S.D.N.Y. 1987). Plaintiff "need not prove the exact number of class members." *Weigmann v. Glorious Food*, 169 F.R.D. 280, 284 (S.D.N.Y. 1996). Finally, Class members are geographically dispersed around the globe, further supporting a finding of numerosity. *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 120, 121 (S.D.N.Y. 2001) ("Several of the relevant factors in addition to the raw number of investors favor a finding that joinder is impractical ... plaintiffs are widely dispersed ... many reside in different nations in Europe and the Caribbean").

### 2. Class members' claims share common issues of fact and law

For each Class, certification should be granted because "there are questions of law or fact common to the class[es]." Fed. R. Civ. P. 23(a)(2). *Marisol A. v. Giuliani*, 126 F.3d 372, 376

---

[2] These figures are unofficial and exclude the compound interest to which Plaintiff and Class members are entitled. Plaintiff and Class members reserve the right to recalculate the amount owed on each bond with the use of other methodology, including but not limited to the inclusion of compound interest and the use of up-to-date figures provided by Argentina.

(2d Cir. 1997) ("commonality requirement is met if plaintiffs' grievances share a common question of law or of fact"). The contract documents that govern each Class "create[] a unifying device" in support of commonality. *Dornberger*, 182 F.R.D. at 81. Moreover, Argentina has breached its contract with Class members "in the same general fashion." *Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 439 (S.D.N.Y. 1995).

With a single moratorium, Argentina broadly and uniformly breached its contract with all Class members. *Krueger*, 163 F.R.D. at 439 ("single, company-wide plan applied to them"); *Marisol A.*, 126 F.3d at 377 ("injuries derive from a unitary course of conduct"). The moratorium provides a "single set of operative facts." *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y. 1994) ("class claims against the Defendants in this action arise out of a single set of operative facts ... [and] a common course of conduct by the Defendants"), *id.*; *Ray M. v. Bd. of Educ.*, 884 F. Supp. 696, 699 (E.D.N.Y. 1995); *Dornberger*, 182 F.R.D. at 80 ("common course of conduct"). Accordingly, all members of each class seek recovery under the same legal theory. *Maywalt*, 147 F.R.D. at 55 ("class claims ... based on the same legal theories").

Members of each Class pose the same fundamental legal and factual question: did Argentina breach its contract with the moratorium and default? *Krueger*, 163 F.R.D. at 441; *Selby v. Principal Mut. Life Ins. Co.*, 197 F.R.D. 48, 57-58 (S.D.N.Y. 2000) (same course of events commonly affected class members; common theory of liability and similar legal arguments); *Genden*, 114 F.R.D. at 52 ("plaintiffs' claim presents a common question as to whether the failure to disclose the susceptibility of the mortgage subsidy bonds to mandatory redemption constitutes a violation of the federal securities laws").

001783-11  137701 V2

Thus, this lawsuit presents many common questions of fact or law for each Class:

1) Whether Argentina is liable under breach of contract for its default;

2) Whether Argentina stopped making payments on interest and principal for bonds that it had issued;

3) Whether the moratorium announced by Argentina in December, 2001 constituted a default under the terms of the contract documents;

4) Whether Class members sustained damages as a result of Argentina's moratorium;

5) Whether Argentina has a viable affirmative defense under the act of state doctrine;

6) Whether Argentina has a viable affirmative defense under the doctrine of unclean hands;

7) Whether Argentina has a viable defense under the doctrine of abuse of rights; and

8) Whether Argentina has a viable defense under N.Y. Judiciary Law Section 489.

Not only are these questions "common to the class," but they are critical to the disposition of all Class members' claims.

Argentina has raised common issues (5) through (8), *supra*, as affirmative defenses to claims brought by all Class members. *See* Answer at ¶¶ 45, 47, 48, 49 (filed Sept. 9, 2005, Dkt. No. 24), thereby confirming "that the affirmative defenses ... are common to the class." *In Re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 154 (2d Cir. 1987); *id.* at 166-167 ("this defense is common to all of the plaintiffs' cases, and thus satisfies the commonality requirement of Rule 23(a)(2)").

Any "factual variations in plaintiffs' claims should not defeat class certification" where plaintiffs have suffered from the same moratorium. *Krueger*, 163 F.R.D. at 439. Even though

Plaintiff brings claims under both New York and English law, such variations do not defeat commonality where "pleadings offer a common factual predicate." *Dornberger*, 182 F.R.D. at 79. This Court previously certified a class under the laws of nine different European nations and the State of New York. *Id.*

New York law applies to Plaintiff's U.S. Bonds. *See* Declaration of Carmine D. Boccuzzi in Support of Motion to Dismiss Amended Complaint dated October 22, 2004 (Dkt. No. 14) at Exhibit H (Dkt. No. 14, exhibit 10), Fiscal Agency Agreement Between the Republic of Argentina and Bankers Trust Co., Fiscal Agent, dated Oct. 19, 1994, at ¶ 23 ("This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York"). The application of New York law to the U.S. Bond provides a common legal issue for all Class members owning beneficial interests in the U.S. Bond.

English law applies to Plaintiff's Japanese Bonds. *See* Declaration of Sanjay Mody in Support of Motion to Dismiss Amended Complaint ("Mody Decl.") dated December 23, 2004 (Dkt. No. 19) at Exhibit B, Global Note Issued Under a Euro Medium-Term Note Programme Series No. 67, Tranche No. 01, at 3 ("This Global Note is governed by and shall be construed in accordance with the laws of England"); *See* Mody Decl. at Exhibit C, Trust Deed Relating to the Republic of Argentina U.S. $1,000,000,000 Euro Medium-Term Note Programme Arranged By Lehman Brothers Int'l, July 27, 1993, at 17.1 ("This Trust Deed shall be governed by and construed in accordance with English law"). English law also applies to Plaintiff's British Bonds. *See* Mody Decl. at Exhibit A, Global Note Issued Under a Euro-Medium Term Note Programme Series No. 53, Tranche No. 01, at 5 ("This Global Note is governed by and shall be construed in accordance with the laws of England"); *See* Mody Decl. at Exhibit C, Trust Deed, at 17.1.

Plaintiff attaches a declaration from an English barrister noting that common issues of liability under English law apply to all Class members who own beneficial interests in the Japanese Bonds and British Bonds. *See* Declaration of Michael Beloff, QC ("Beloff Decl."). The same factual predicate will prove liability for Class members owning beneficial interests in the Japanese Bonds and British Bonds. Beloff Decl. ¶ 3. Determining whether or not there has been a breach will require an analysis of objective factors common to all Class members. Beloff Decl. ¶ 9 ("These objective factors would be common to breach of contract claims brought by Mr. Lavaggi and other persons owning the bonds"); *see also* ¶¶ 4-8. Subjective factors unique to individual bondholders will be irrelevant. Beloff Decl. ¶8 ("the Court considers objective facts, not subjective intention"); *see also* ¶¶ 5-6. In short, common issues will predominate over individual issues in the Class consisting of Japanese Bonds and British Bonds. Beloff Decl. ¶ 4 ("Interpreting the obligation and determining whether Argentina's actions constituted a breach thereof would be a common legal issue for all persons owning the bonds").

### 3. Mr. Lavaggi's claims are typical of those of other Class members

Mr. Lavaggi's claims are typical of those of other Class members under Fed. R. Civ. P. 23(a)(3). As the Second Circuit has explained, typicality "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001) (citation omitted). Mr. Lavaggi owns beneficial interests in the U.S. Bonds, British Bonds, and Japanese Bonds. Gaudet Decl., Exs. A and B. His claims and the claims of the Class members arise from the same moratorium announced by Argentina, and members of each Class share the same claim for breach of contract. As this Court explained in a similar action, "Plaintiff, being a bondholder, has claims typical of those of the class by virtue of

- 9 -

being subject to the same contractual terms." *H.W. Urban GmbH v. Republic of Argentina*, 2003 U.S. Dist. Lexis 23363, at *5 (S.D.N.Y. Dec. 30, 2003).

Because Mr. Lavaggi and Class members suffer from the same default, he has "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *In re Magnetic Audiotape*, 2001 U.S. Dist. Lexis 7303, at *8; *In re Frontier Ins. Group Secs. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997). His claims "are not based on conduct unique" to him. *Dornberger*, 182 F.R.D. at 81. The same objective factors will be used to prove breach of contract claims for the British Bonds and Japanese Bonds. Beloff Decl. ¶¶ 5-8. Mr. Lavaggi and Class members wish to "achiev[e] the maximum amount of recovery for their particular subclass." *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992); *In re Frontier Ins. Group*, 172 F.R.D. at 41 (quoting *Drexel*); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000) (class representative has "incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions"). Each Class member "has an interest in demonstrating the unlawfulness" of Argentina's moratorium. *Krueger*, 163 F.R.D. at 442; *David v. Showime/Movie Channel*, 697 F. Supp. 752, 757 (S.D.N.Y. 1988) ("congruence of interests"). If Argentina's moratorium is proven unlawful, "the benefits would accrue to all members of the class." *Krueger*, 163 F.R.D. at 442.

Moreover, Argentina has raised the same affirmative defenses against all Class members, regardless of whether they bring claims under New York or English law. *See* Answer at ¶¶ 45, 47, 48, 49. Consequently, "the typicality issue disappears because of the virtual identity of all of

- 10-

the plaintiffs' cases with respect to the [] defense[s]." *In re "Agent Orange,"* 818 F.2d at 167; *In re Oxford Health Plans*, 191 F.R.D. at 376; *Weigmann*, 169 F.R.D. at 285.

### 4. Mr. Lavaggi is an adequate representative with experienced class action counsel

Because Mr. Lavaggi is an adequate Class representative with experienced counsel, he "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113 (2d Cir. 2005) ("adequate representation of a particular claim is determined by the alignment of interests of class members, not proof of vigorous pursuit of the claim"). Mr. Lavaggi and Class members do not have "interests that are 'antagonistic' to one another." *Drexel*, 960 F.2d at 291; *Marisol A.*, 126 F.3d at 378 ("there is no conflict of interest between the named plaintiffs and other members of the plaintiff class"). Members of each Class "share a common interest" in proving that Argentina breached its contract and in "obtain[ing] the highest possible recovery." *Drexel*, 960 F.2d at 291; *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 n.1 (1985) ("all members of the class have the same interest in enforcing their claims against the defendant"). Further, Mr. Lavaggi's "theory of liability is the same as the other members of the class," thereby supporting his adequacy as a representative for each Class. *Weigmann*, 169 F.R.D. at 286.

Mr. Lavaggi has retained counsel with significant experience in class action litigation, including securities lawsuits. See Gaudet Decl., Ex. C (firm résumé). Hagens Berman Sobol Shapiro LLP has successfully moved for class certification in cases brought before this Court (*In re Magnetic Audiotape Antitrust Litig.*, 2001 U.S. Dist. Lexis 7303 (S.D.N.Y. June 6, 2001)) and this Circuit (*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)). In short, Mr. Lavaggi's counsel is "qualified, experienced and able to conduct the litigation." *In re Magnetic Audiotape*, 2001 U.S. Dist. Lexis 7303, at *8; *In re Oxford Health Plans*, 191 F.R.D. at

- 11 -

376-377 ("no question that counsel for Lead Plaintiffs are qualified to try a case of this nature, and experienced in both class action and general securities litigation").

In addition, Mr. Lavaggi has notified Argentina that payment of interest and principal is immediately due and payable in accordance with the terms governing his U.S. bonds. Gaudet Decl., Ex. D (letter to Stanley Burg, Deutsche Bank Trust Company Americas). Mr. Lavaggi has also presented claims for immediate payment of principal and interest on his Japanese Bonds and British Bonds in accordance with their contractual terms. Gaudet Decl., Ex. E (letter to Reginald Roland, Bank of New York). He has received authorization to sue. Gaudet Decl., Ex. F (letter from Banca del Gottardo).

## C. Because Mr. Lavaggi Meets the Requirements of Fed. R. Civ. P. 23(b), Certification Is Proper

Because he predominantly seeks monetary damages, Mr. Lavaggi seeks certification under Fed. R. Civ. P. 23(b)(3).

### 1. Common questions of fact and law predominate over individual issues

In this case, "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The contract documents governing each of Mr. Lavaggi's bonds "create[] a unifying device, permitting the common issues to predominate over the individual issues despite other material variations." *Dornberger*, 182 F.R.D. at 81. Each Class is thereby unified by common contract documents. Class members owning beneficial interests in Japanese Bonds are unified by the governing Global Note and Trust Deed (*supra,* at 8), and Class members owning beneficial interests in British Bonds are similarly unified by the Trust Deed and their own governing Global Note (*supra,* at 8).

- 12-

Because all Class members are "'allegedly aggrieved by a single policy of defendant[]," common questions predominate over individual issues. *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006). Argentina has injured all Class members through an "across-the-board deprivation" of payments of principal and interest. Accordingly, the two Classes for which Mr. Lavaggi seeks certification each share common issues that predominate over individual issues as the result of Argentina's single policy. *See Urban*, 2003 U.S. Dist. Lexis 23363, at *6 ("It is clear that the questions of law and fact common to the members of the class predominate over any individual questions").

> **2.    Class action is superior for adjudicating this dispute, particularly since Class members are scattered across the globe**

Mr. Lavaggi's proposed Classes each meet all four factors considered by courts in determining whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3)(A)-(D).

First, "class members have little interest in maintaining separate actions since there already exists ... [a strong case for class-wide liability] in this action and, without class notification, most putative class members will not even know that they suffered a violation of their [] rights." *In re Nassau County*, 461 F.3d at 230; Fed. R. Civ. P. 23(b)(3)(A); *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 172 (S.D.N.Y. 1997) ("highly unlikely that individual plaintiffs would shoulder the burden and cost of this vast and complex litigation"). *See Urban*, 2003 U.S. Dist. Lexis 23363, at *7 ("for those who wish to be part of this proposed class action, it is reasonable for them to believe that it is superior to their bringing individual actions").

Individual lawsuits "would not be cost effective, especially in light of the fact that many of the plaintiffs are foreign nationals." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144,

- 13-

158 (S.D.N.Y. 2002) (magistrate's recommendation adopted by District Court); *Cromer*, 205 F.R.D. at 133 ("would exponentially increase the costs of litigation for all"); *id.* at 134 ("Given the high cost of this litigation, it is not clear that all of the investors would pursue or would even be able to pursue litigation without the class action option"). Bondholders who are unaware of contract documents governing their bonds "likely never will know that defendant[] violated their clearly established [] rights, and thus never will be able to vindicate those rights. As a practical matter, then, without use of the class action mechanism, individuals harmed by defendants' policy and practice may lack an effective remedy altogether." *In re Nassau County*, 461 F.3d at 229. This is particularly true where, as here, roughly 76 percent of bondholders accepted a historically low settlement offer, partly because they were not aware of their legal rights (*supra*, at 3). Indeed, even when they are apprised of their rights, Mr. Lavaggi and others have had difficulty obtaining contract documents, letters, and other materials from their own banks and brokers. Therefore, it is plainly true that "without use of the class action mechanism, individuals harmed by defendant['s[] policy and practice may lack an effective remedy altogether." *Id.* at 229 (citation omitted).

Second, Mr. Lavaggi's suit has progressed beyond Argentina's motion to dismiss. Therefore, class certification will help "resolve[] quickly and conclusively" the remaining legal claims of Mr. Lavaggi and Class members. *In re Nassau County*, 461 F.3d at 230. Third, "concentrating the litigation in one forum simplifies and streamlines the litigation process" and preserves judicial resources. *Id.*; Fed. R. Civ. P. 23(b)(3)(C); *Maywalt*, 147 F.R.D. at 57-58 ("considerations of judicial economy and justice support the conclusion that all of the Class claims be asserted in a single forum because all of the Defendants' acts affected the Damson Limited Partners in a similar manner").

- 14-

Fourth, there is "little difficulty in managing a class action" (*In re Nassau County*, 461 F.3d at 230), particularly since this Court has already certified nine or more classes against Argentina (*supra* at 1-2), granted summary judgment to numerous individual plaintiffs (*supra*, at 3), and granted summary judgment to a certified class (*supra*, at 3). The Beloff Declaration demonstrates that application of English law will be easily managed by this Court (Beloff Decl. ¶¶ 3-7), particularly with the use of two Classes requested by Plaintiff.

Because Argentina has raised the same affirmative defenses against all Class members, class-wide adjudication is "superior to the alternatives." *In re "Agent Orange,"* 818 F.2d at 167. Whether these defenses succeed or fail, they will "dispose[] of" issues that are pertinent to each and every Class member. *Id.* It will be more efficient to handle these class-wide defenses at once rather than in individual trials.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Lavaggi respectfully requests that this Court grant his motion for class certification.

Dated this 10th day of November, 2006

Respectfully submitted,

MEREDITH COHEN GREENFOGEL &
SKIRNICK, P.C.


By  /s/ Robert A. Skirnick
    Robert A. Skirnick (RS 2636)
One Liberty Plaza, 35th Floor
New York, NY  10006
Telephone:  (212) 240-0020

– and –

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman
Robert Gaudet, Jr.
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292