```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
OTTAVIO LAVAGGI,                                                   :
                                                                   :   04 Civ. 5068 (TPG)
                         Plaintiff,                                :
                                                                   :
            - against -                                            :
                                                                   :
THE REPUBLIC OF ARGENTINA,                                         :
                                                                   :
                         Defendant.                                :
                                                                   :
------------------------------------------------------------------ X
```

## MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

 

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000
Attorneys for the Republic of Argentina

Of Counsel:

    Jonathan I. Blackman
    Carmine D. Boccuzzi
    Christopher P. Moore

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND .......................................................................................................... 2

    A.    Lavaggi Does Not Own The Bonds On Which He Sues

    B.    The English Law Governed Trust Deed Limits Legal Actions To Circumstances Not Present Here

ARGUMENT ................................................................................................................ 6

POINT I

THE ACTION SHOULD BE DISMISSED BECAUSE LAVAGGI DOES NOT OWN THE BONDS ON WHICH HE PURPORTS TO SUE .................................. 7

POINT II

THE TRUST DEED PRECLUDES PLAINTIFF FROM PROCEEDING DIRECTLY AGAINST THE REPUBLIC WITH RESPECT TO THE BRITISH BONDS AND JAPANESE BONDS ............................................................................. 10

CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**                      Page(s)

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......................................................................................... 6

Beck v. Consolidated Rail Corp.,
394 F. Supp. 2d 632 (S.D.N.Y. 2005) ................................................................ 9

CIBC v. Saxony Carpet Co.,
899 F. Supp. 1248 (S.D.N.Y. 1995) ................................................................... 7

Concord Trust v. The Law Debenture Trust Corp plc,
[2005] 1 W.L.R. 1591 (House of Lords, Apr. 28, 2005) .................................. 11

Gordon v. Fundamental Investors, Inc.,
362 F. Supp. 42 (S.D.N.Y. 1973) ....................................................................... 9

Hennenberry v. Sumitomo Corp. of America,
415 F. Supp 2d 423 (S.D.N.Y. 2006) ................................................................. 6

Investors Comp. Scheme Ltd. v. W. Bromwich Bldg. Soc.,
[1998] 1 W.L.R. 896 (House of Lords, Jun. 19, 1997) .................................... 11

Jones v. Niagara Frontier Transp. Auth.,
836 F.2d 731 (2d Cir. 1987), cert. denied, 488 U.S. 825 (1988) ....................... 9

Rivera v. Nat'l Passenger R.R. Serv.,
442 F. Supp. 2d 164 (S.D.N.Y. 2006) ................................................................ 7

Solutia Inc., v. FMC Corp.,
385 F. Supp. 2d 324 (S.D.N.Y. 2005) ................................................................ 9

**Other Authorities**

Liz Dixon & David Wall, Bank of England, Collective action problems
and collective action clauses, Financial Stability Review: June 2000 ............. 11

Defendant the Republic of Argentina (the "Republic") submits this Memorandum of Law in support of its motion for summary judgment dismissing this action.

## PRELIMINARY STATEMENT

Plaintiff's documents and admissions demonstrate beyond dispute that he does not own any of the three bonds at issue in this case – the USD Bonds, British Bonds or Japanese Bonds.[1] Rather, each of those bonds is in fact held in the accounts of Altavista Ltd. ("Altavista"), a legally separate corporate entity that is not a plaintiff here. Plaintiff has no individual claim, and accordingly this action must be dismissed.[2]

Moreover, even if Lavaggi could overcome the fact that he does not own the bonds on which he purports to sue, he would in any event be precluded from asserting claims based upon the British Bonds and Japanese Bonds (collectively, the "EMTN Bonds"). These bonds were issued under the Republic's Euro Medium-Term Note Programme and are governed by English law. The applicable Trust Deed, dated July 27, 1993 (the "Trust Deed") (Ex.B), expressly provides that legal action can proceed only under the circumstances specified in the Trust Deed (e.g., if brought by the Trustee following instruction by holders of 25% of outstanding principal of the relevant series of bonds), none of which exist here.

---

[1] The USD Bonds have ISIN US040114BC38, a coupon rate of 12.125% and a maturity date of Feb. 25, 2019. The British Bonds have ISIN XS0077243730, a coupon rate of 10% and a maturity date of June 25, 2007. The Japanese Bonds have ISIN XS0100354066, a coupon rate of 3.5% and a maturity date of Aug. 11, 2009.

[2] The Republic is today also submitting its opposition to plaintiff's motion for class certification – as the Court has already held, a plaintiff can only serve as class representative in connection with bonds the plaintiff actually owns. See Lavaggi v. Republic of Argentina, 04 Civ. 5068 (TPG), August 25, 2005 ("Lavaggi") at 5 ("Plaintiff does not allege and cannot show that he suffered any damages with respect to the bonds that he does not own. Therefore, plaintiff lacks standing to assert claims regarding to those bonds on behalf of a class."). A true and correct copy of the Lavaggi opinion is attached as Exhibit D to the Declaration of Christopher P. Moore In Support of The Republic's Motion For Summary Judgment And In Opposition to Plaintiff's Motion For Class Certification, dated February 23, 2007 ("Moore Decl."). Unless otherwise indicated, referenced exhibits are attached to the Moore Decl.

## BACKGROUND

A.  **Lavaggi Does Not Own The Bonds On Which He Sues**

The Amended Complaint alleges generally that Lavaggi owns the bonds upon which this action is based.  See Amended Class Action Complaint, dated Sept. 22, 2004 (the "AC") ¶ 11 ("Plaintiff Ottavio Lavaggi owns bonds issued by the Republic of Argentina on which the Republic of Argentina has failed to pay interest, and has been damaged thereby.") (Ex. E).  Discovery, however, has demonstrated that Lavaggi does not own any of those bonds, each of which is in fact owned by the legally separate entity, Altavista.  Altavista is a limited liability company incorporated under the laws of St. Kitts and Nevis.  Dep. Tr. of Ottavio Lavaggi, dated Jan. 24, 2007 at 114 ("Tr.") (Ex. F).  Altavista is not a plaintiff in this action.  Indeed, Altavista is mentioned nowhere in the Amended Class Action Complaint.

This is not the first time Lavaggi has asserted claims based upon bonds he does not in fact own.  Lavaggi filed his initial complaint in June, 2004, seeking to bring a class action on behalf of owners of 80 series of Republic-issued bonds.  He then filed an Amended Complaint, which inexplicably dropped claims based upon 53 of those bonds series, and redefined the putative class as "all persons who, owned any of the series of bonds issued by the Republic of Argentina identified [as one of the 27 bonds listed therein]."  See AC ¶ 13. (Ex.E).

As it turned out, Lavaggi did not own the vast majority of the bonds identified in the Amended Complaint.  The Republic therefore moved to dismiss the Amended Complaint because Lavaggi was not entitled to assert claims based upon bonds that he does not own.  The Court agreed, dismissing the claims of Lavaggi that were based upon the 22 of the bonds that were not even alleged, let alone proven, to be owned by him.  Lavaggi at 5 ("Plaintiff does not allege and cannot show that he suffered any damages with respect to the bonds that he does not

own. Therefore, plaintiff lacks standing to assert claims regarding those bonds on behalf of a class.") (Ex.D). In addition, the Court separately dismissed Lavaggi's claims based upon two of the five remaining series – the Swiss Bonds and Euro Bonds – for lack of subject matter jurisdiction because those bonds do not provide for a waiver of immunity to suit in New York, thereby leaving the three bonds identified in plaintiff's motion for class certification.

Over 14 months later, Lavaggi filed the instant motion for certification of two classes of holders of three series of Republic-issued bonds, based upon his purported ownership of three Republic-issued bonds. See Mem. Of Law in Supp. Of Pl.'s Mot. for Class Certification, dated Nov. 10, 2006 at 1 n.1 ("Pl. Br."). The first proposed class is defined as

> owners of beneficial interests in bonds denominated in United States dollars with ISIN US040114BC38, a coupon rate of 12.125 percent, and a maturity date of February 25, 2019 ("U.S. Bonds") . . . who continuously own beneficial interests in [the bonds] from the date of class certification until the date of final judgment in the district court.

Pl. Br. at 1. The second class is defined as

> (a) owners of beneficial interests in bonds denominated in Japanese Yen with ISIN XS0100354006, a coupon rate of 3.5 percent, and a maturity date of 2009 ("Japanese Bonds") and (b) owners of beneficial interests in bonds denominated in British Pounds with ISIN XS0077243730 ("British Bonds") . . . who continuously own beneficial interests in [the bonds] from the date of class certification until the date of final judgment in the district court.

Id.

However, documents produced by Lavaggi, as well as his deposition, demonstrate that he does not own any of the three bonds upon which his motion for class certification is based. See letters from Banca Del Gottardo, dated Mar. 2, 2006 ("Del Gottardo Letters") (custodial letters indicating that the USD Bonds, British Bonds and Japanese Bonds are owned by Altavista) (Exs. G, H); Tr. at 114 (Altavista is "a limited liability company incorporated in the State of St. Kitts and Nevis.") (Ex. F); id. at 106-07 (Q: "[A]ll $140,000 of the USD bonds are

3

currently held in an account of Altavista Limited?" A: "As far as I know, yes." Q: "Have you ever personally held the USD bonds?" A: "On a personal account, I do not think so."); Id. at 126-27 (Q. "Have you ever personally owned the British Bonds?" A: "I don't remember." Q. "What entity currently holds the British bonds? A: "I believe it's Altavista Limited."); id. at 139 (Q: "In the upper right-hand corner [of the custodial letter] it states Altavista Limited; again, this is the entity that currently holds the Japanese Bonds?" A: "I believe so, yes.").[3] While Lavaggi does claim to personally own at least one bond, he is not suing on that bond here. Id. at 85-86 (testifying that "I own one bond . . . [that is] in an account which is in my own name," and explaining that that bond is not at issue in this case).

Other than having been identified as a limited liability company incorporated in St. Kitts and Nevis, the entity Altavista remains shrouded in mystery. Lavaggi claimed during his deposition to have no documents in his possession concerning its legal structure. See Tr. at 118-19 (Q: "Do you possess any of the documents relating to the organization of Altavista Limited?" A: "No." Q: "Have you ever maintained any documents that concern the organization of Altavista Limited?" A: "I don't believe so.") (Ex. F). When asked who might have any such documents, Lavaggi identified a Mr. DeBernardi, an employee of the Fiduciaire Monaco S.A., which "is the company in Luxembourg who took care of finding a lawyer in St. Kitts and Nevis who proceeded with the incorporation [of Altavista]." Id. at 121. Lavaggi testified, however, that he had never asked Mr. DeBernardi for any documents concerning the organization of Altavista. See id. at 122.

The Republic has made repeated requests for documents concerning Altavista. See Letter of C. Moore dated Feb. 1, 2007 at 1 (requesting "information concerning companies

---

[3] Lavaggi also testified that a company named Cofre Holding Company – which, according to Lavaggi, is a holding company formed under the laws of Luxembourg – may previously have owned a portion of the bonds at issue in this case. See Tr. at 46 (Ex. F); id. at 105-06.

that have held, or currently hold, a beneficial interest in the three bonds that are the subject of this action," as well as "[i]nformation concerning the creation and legal structure of" those companies. (Ex. J); letter of C. Moore dated Feb. 12, 2007 (renewing request for the same information) (Ex. K).  Plaintiff has refused to produce any information concerning the legal structure of Altavista, Cofre Holding or any other entity holding the bonds at issue in this matter. See Letter of R. Gaudet, dated February 21, 2007 ("Gaudet Letter") at 3 (asserting that "[a]ny . . . information about the corporations holding Mr. Lavaggi's [purported] bonds is irrelevant and unnecessary.") (Ex.L).

**B.    The English Law Governed Trust Deed Limits Legal Actions
To Circumstances Not Present Here**

The English law governed British Bonds and Japanese Bonds (the "EMTN Bonds") expressly provide:

> At any time after the Notes become due and payable, the Trustee may, at its discretion and without further notice, institute such proceedings against the Republic or Banco Central, as the case may be, as it may think fit to enforce the terms of the Trust Deed, the Notes, the Coupons and the Banco Central Undertaking, <u>but it need not take any such proceedings unless</u> (a) it shall have been so <u>directed by an Extraordinary Resolution</u> [(a resolution passed at a duly convened meeting of Noteholders by a majority consisting of not less than 50% of the votes case in accordance with Condition 11)] <u>or</u> so <u>requested in writing by Noteholders holding at least 25 percent</u> in principal amount of the Notes of the relevant Series outstanding, and (b) it shall have been indemnified to its satisfaction.  <u>No Noteholder or Couponholder may proceed directly against the Republic</u> . . . unless the Trustee, <u>having become bound so to proceed</u>, fails to do so within the reasonable time and such failure is continuing.

Trust Deed, Terms and Conditions § 12 (Enforcement) (Ex. B) (emphasis added); see also Declaration of Matthew Hardwick, dated February 23, 2007 ("Hardwick Declaration") ¶ 18. Similarly, under Section 10 of the Trust Deed (Events of Default), <u>only</u> the Trustee is authorized, upon a specified "event of default," to take action such as declaring the principal amount of the

5

securities to be due and payable. See id. § 10. This "no action" clause is a standard provision in debt instruments and is enforceable under English law. See Hardwick Decl. ¶¶ 31, 32.

Plaintiff does not, because he cannot, allege that the Trustee for the EMTN Bonds has become "bound to proceed" against the Republic. Lavaggi conceded during his deposition the lack of any knowledge of the satisfaction of the requirements for this suit to proceed. See Tr. at 191-92 (Q: "[D]o you know whether at least 25 percent . . . of the holders of the outstanding Japanese bonds have instructed the trustee to initiate litigation against the Republic?" A: "The answer is no, I am not sure.") (Ex. F); id. at 193-94 (Q: "Do you know whether 25 percent of the holders of the outstanding British bonds have requested that the trustee initiate litigation against the Republic?" A: "I have to repeat the answer. No, I don't know. I am not certain."). Moreover, he conceded that he did not have any reason to believe that the Trustee would not initiate litigation against the Republic if requested to do so by the requisite number of holders. See Tr. at 192-93 (Ex. F). Plaintiff has provided no legal or factual basis for his apparent position that he may ignore the express terms of the Trust Deed and effectively assume the role of the Trustee, and otherwise disregard the requirements for bringing a legal action.

## ARGUMENT

A court must grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Hennenberry v. Sumitomo Corp. of America, 415 F. Supp. 2d 423, 456 (S.D.N.Y. 2006). The opposing party cannot rely on conclusory allegations or denials, speculation or evidence that is not significantly probative. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

Once the party seeking summary judgment "inform[s] the court of the basis for its motion, and identif[ies] which materials it believes demonstrate the absence of a genuine issue of material fact," CIBC v. Saxony Carpet Co., 899 F. Supp. 1248, 1251 (S.D.N.Y. 1995), "the burden then shifts to the nonmoving party to 'set forth facts showing that there is a genuine issue for trial.'" Id. at 1251-52 (quoting Fed. R. Civ. P. 56(e) and citing authorities); see also Rivera v. Nat'l. Passenger R.R. Serv., 442 F. Supp. 2d 164, 167 (S.D.N.Y. 2006).

## POINT I

### THE ACTION SHOULD BE DISMISSED BECAUSE LAVAGGI DOES NOT OWN THE BONDS ON WHICH HE PURPORTS TO SUE

Although the Amended Complaint asserts that "Plaintiff Ottavio Lavaggi owns bonds issued by the Republic of Argentina on which the Republic of Argentina has failed to pay interest, and has been damaged thereby," AC ¶ 11 (Ex. E), discovery has established that the bonds at issue in this case are in fact owned by Altavista, not Lavaggi.

Despite repeated requests by the Republic, plaintiff has produced no evidence suggesting that he personally owns any of the three bonds at issue.[4] To the contrary, the only documents and testimony provided by Lavaggi establishes that the bonds at issue in this case are owned not by Lavaggi, but by one or more legally separate corporate entities. See Del Gottardo Letters (custodial letters indicating that the USD Bonds, British Bonds and Japanese Bonds are currently held in accounts of an entity named Altavista) (Exs. G, H); Tr. at 114 (Lavaggi testifying that Altavista Ltd. is "a limited liability company incorporated in the State of St. Kitts

---

[4] See e.g., Letter of Carmine Boccuzzi, dated January 10, 2007 (seeking documentary proof of Lavaggi's ownership of bonds – information initially requested in the Republic's First Request for the Production of Documents) (Ex. I); letter of C. Moore dated Feb. 1, 2007 (requesting production of documents that plaintiff's counsel agreed to produce at Lavaggi's deposition) (Ex. J); letter of C. Moore dated Feb. 12, 2007 (again requesting the information sought in the Republic's previous correspondence) (Ex. K).

7

and Nevis.") (Ex. F); id. at 107 (Q: "Have you ever personally held the USD Bonds?" A: "On a personal account, I do not think so."); id. at 126-27 (Q. "Have you ever personally owned the British Bonds?" A: "I don't remember". Q. "What entity currently holds the British bonds?" A: "I believe it's Altavista Limited."); id. at 139 (Q: "In the upper right-hand corner [of the custodial letter] it states Altavista Limited; again, is this the entity that currently holds the Japanese Bonds?" A: "I believe so, yes.").[5] Lavaggi conceded that while he does own one bond personally, it is <u>not</u> being sued on here. See id. at 85-86 (testifying that "I own one bond . . . [that is] in an account which is in my own name," and explaining that that bond is not at issue in this case).

As this Court has already determined, a plaintiff does not have standing to bring suit on bonds that it does not own:

> It is . . . black-letter law that standing is an essential element of subject matter jurisdiction. . . . In order to have standing to assert a claim on behalf of a class, the proposed class representative must allege that he has been personally injured, not that injury has been suffered by other unidentified members of the class which he purports to represent. Warth v. Seldin, 422 U.S. 490, 502 (1975). Plaintiff does not allege and cannot show that he suffered any damages with respect to the bonds that he does not own. Therefore, plaintiff lacks standing to assert claims regarding those bonds on behalf of a class.

Lavaggi at 5 (Ex. D).

Because Altavista Ltd. – an entity legally separate from Lavaggi – owns the USD Bonds, British Bonds and Japanese Bonds, only that entity may assert claims based upon those bonds. See Nevis Limited Liability Company Ordinance, 1995 (as amended, 2002) § 18 ("A

---

[5] See also Tr. at 124-25 (testifying that, to the best of his recollection, the USD Bonds were not purchased using funds from his personal account) (Ex. F). The facts are clear that Altavista is the current owner of the Republic-issued bonds. Given plaintiff's refusal to produce information relating to this issue, the Republic does not know who originally purchased these bonds, though for the present motion, the information is immaterial because it is undisputed that Lavaggi is not the owner of these bonds.

8

limited liability company shall be a legal entity with separate rights and liabilities, distinct from its members or managers.") (Ex. Q).[6] Lavaggi is at most a shareholder of Altavista and has no standing to bring claims of the corporate entity. See Jones v. Niagara Frontier Transp. Auth., 836 F.2d 731, 736 (2d Cir. 1987) ("A shareholder – even the sole shareholder – does not have standing to assert claims alleging wrongs to the corporation.") cert. denied, 488 U.S. 825 (1988); Gordon v. Fundamental Investors, Inc., 362 F. Supp. 41, 45 (S.D.N.Y. 1973) ("Relief for harm done to the corporation is ordinarily awarded to the corporation, not to its shareholders individually."). "Under New York Law, an individual shareholder has no right to bring an action in his own name and in his own behalf for a wrong committed against the corporation, even though the particular wrong may have resulted in a deprecation or destruction of the value of his corporate stock. . . . For a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation." Solutia Inc., v. FMC Corp., 385 F. Supp. 2d 324 (S.D.N.Y. 2005) (internal quotation marks and citations omitted);[7] Beck v. Consolidated Rail Corp., 394 F. Supp. 2d 632 (S.D.N.Y. 2005).

   Having created Altavista in order to receive the protections and economic benefits provided by its limited liability status, see Tr. at 116 (testifying that he created Altavista Ltd. for "[e]state reasons, tax reasons, privacy reasons") (Ex. F), Lavaggi cannot ignore the legal separateness between that entity and himself. See also id. at 135-36 (Q: "Do you recognize the

---

[6]  See also id. at § 20 ("The limited liability company shall be a proper plaintiff in a [suit to] assert a legal right of the limited liability company and a proper defendant in a suit to assert a legal right against the limited liability company; and the naming of a member, manager or employee of the limited liability company as a party to a suit in Nevis or elsewhere to represent the limited liability company is subject to a motion to dismiss if such party is the sole party to sue or defend[.]").

[7]  The rule applies to both closely held corporations and limited liability corporations. See id.

difference [between your personal accounts and the accounts in which the bonds at issue in this case are held], for example, when you're filing your taxes?" A: "Absolutely, yes. If I was residing in a jurisdiction where certain income is taxed, I would of course recognize that difference."). Lavaggi's claims – each of which is based upon bonds that he does not in fact own – must therefore be dismissed.

## POINT II

### THE TRUST DEED PRECLUDES PLAINTIFF FROM PROCEEDING DIRECTLY AGAINST THE REPUBLIC WITH RESPECT TO THE BRITISH BONDS AND JAPANESE BONDS

Even if Lavaggi did own the British Bonds and Japanese Bonds – which, as demonstrated above, he does not – he would nevertheless be precluded from proceeding directly against the Republic with respect to any claims based upon those bonds, each of which is governed by the English-law Trust Deed.

Under the express terms of the Trust Deed governing the British Bonds and Japanese Bonds, plaintiff cannot pursue claims in connection with those bonds:

> <u>No Noteholder or Couponholder may proceed directly against the Republic</u> . . . unless the Trustee, <u>having become bound so to proceed</u>, fails to do so within the reasonable time and such failure is continuing.

Trust Deed, Terms and Conditions § 12 (Enforcement) (Ex. B) (emphasis added).[8]  Similarly, under Section 10 of the Trust Deed (Events of Default), <u>only</u> the Trustee is authorized, upon a

---

[8]  The Republic submits with this memorandum the Declaration of Matthew Hardwick, an English law expert, which further supports the Republic's position that the Trust Deed precludes plaintiff from proceeding directly against the Republic. As explained in the Hardwick Declaration, clauses like the one contained in the Trust Deed – called "no-action" clauses because they prevent individual bondholder action and vest the enforcement rights in the Trustee – are common in debt instruments, and are enforceable under English law. See Hardwick Decl. ¶¶ 31, 32. By contrast, the Declaration of Michael Beloff, QC, In Support of Plaintiff's Motion for Class Certification ("Beloff Declaration") speaks only to whether the claims asserted by plaintiff based on the British Bonds and Japanese Bonds are sufficiently similar such that they meet the "commonality" prong

10

specified "event of default," to take action such as declaring the principal amount of the securities to be due and payable. See id. § 10.

Given this plain language, trust deeds like the one upon which plaintiff sues are recognized by the governing English law as preventing unilateral bondholder litigation: "Under English trust law, a trustee represents the interest of bondholders, and has the potential benefit that <u>no individual bondholder can unilaterally launch litigation</u>." Liz Dixon & David Wall, Bank of England, <u>Collective action problems and collective action clauses</u>, Financial Stability Review: June 2000, at 144 (emphasis added); see also id. at 145 ("individual bondholders cannot themselves launch litigation"). The relevant case law reflects that a bondholder must rely on the trustee to vindicate its rights. See, e.g., <u>Concord Trust v. The Law Debenture Trust Corp plc</u>, [2005] 1 W.L.R. 1591, 1598 (House of Lords, Apr. 28, 2005) (under similar trust deed structure, "trustee has broad discretionary powers to take such action, including but not limited to the commencement of legal proceedings, as it thinks fit").[9] This is particularly so where, as here, the Trust Deed's plain terms prohibit direct proceedings by noteholders against the Republic. See Trust Deed, Terms and Conditions § 12 (Ex. B); Hardwick Decl., ¶¶ 18, 23-29. Plaintiff cannot point to any case law that would permit him to rewrite the governing Trust Deed to ignore the plain language of the Deed's enforcement provisions.[10]

---

    under Rule 23 and can be addressed in a single class action concerning both bonds. See Beloff Declaration ¶ 9. The Beloff Declaration does not address in any way the legal effect of the provisions of the Trust Deed relevant here.

[9] English courts, like New York courts, interpret contracts as written. See <u>Investors Comp. Scheme Ltd. v. W. Bromwich Bldg. Soc.</u>, [1998] 1 W.L.R. 896, 904 (House of Lords, Jun. 19, 1997) (under English contract principles, "it is, after all, from the words used that one must ascertain what the parties meant.").

[10] The present motion, which involves standard English-law trust indenture provisions, involves a situation different from that before the Court in <u>Etevob v. Republic of Argentina & Province of Buenos Aires</u>, 03 Civ. 1680 (TPG), <u>Franceschi v. Republic of Argentina</u>, 03 Civ. 4693 (TPG), <u>Lopez Fontana v. Republic of Argentina</u>, 03 Civ. 8531 (TPG), and <u>Latinburg S.A. v. Republic of Argentina</u>, 03 Civ. 8528 (TPG). In those cases, the Court considered language in the Republic's

11

Plaintiff does not, because he cannot, even allege – let alone identify any evidence – that the Trustee for the EMTN Bonds has become "<u>bound to proceed</u>" against the Republic. One necessary condition would be a demand by 25% of the outstanding principal of the relevant series of bonds that suit be instituted – a demand not made here.[11]  However, Lavaggi testified during his deposition that he had no idea whether the requisite number of bondholders had in fact requested that the Trustee initiate litigation against he Republic.  <u>See</u> Tr. at 191-92 (Q: "[D]o you know whether at least 25 percent . . . of the holders of the outstanding Japanese bonds have instructed the trustee to initiate litigation against the Republic?" A: "The answer is no, I am not sure.") (Ex. F); <u>id.</u> (Q: "Do you know whether 25 percent of the holders of the outstanding British bonds have requested that the trustee initiate litigation against the Republic?" A: "I have to repeat the answer. No, I don't know. I am not certain."). Lavaggi also conceded, as he must, that he had no reason to believe that the Trustee would not initiate litigation against the Republic if it were requested to do so by the requisite number of holders.  <u>See</u> Tr. at 192-93 (Ex. F). Because he cannot demonstrate that the Trustee was bound to institute suit, plaintiff also cannot show that the Trustee failed to do so within a reasonable time, as the structure governing the EMTN Bonds <u>explicitly requires</u> before a noteholder may bring its own suit.

---

FAA and the Province of Buenos Aires' Indenture (neither of which governs the EMTN Bonds), which set out the respective rights of the Registered Holders of registered notes and the owners of beneficial interests in the notes.  <u>Cf.</u> <u>Fontana v. Republic of Argentina</u>, 415 F.3d 238 (2d Cir. 2005) (suggesting that FAA provisions might preclude beneficial owners from suing without the registered owners' consent).

[11]  Lavaggi agreed during his deposition that similar collective action clauses are valid and enforceable.  <u>See</u> Tr. at 269-70 (Q: "Why do you not oppose non-retroactive collective action clauses?" A: "Because they are on a voluntary basis. Nobody is forced to buy a bond with certain clauses if it doesn't like the clauses.") (Ex. F); <u>id.</u> at 270 ("I think the basis for the resolution of conflicts on securities are the contracts that such securities have and their interpretation and decision that are to be taken by the court in legal action.").

12

The EMTN Bonds specifically established a trust structure charging Chase Manhattan Trustees Limited[12] with the right and obligation to institute proceedings against the Republic, and expressly precluding noteholders such as Lavaggi from bringing suit. Under this trust structure and English law, the conditions for individual action by plaintiff are not present, and so plaintiff is not entitled to proceed against the Republic for payment on the EMTN Bonds. The claims based upon the British Bonds and Japanese Bonds must therefore be dismissed.[13]

## CONCLUSION

For the foregoing reasons, the Court should grant the Republic's motion for summary judgment and dismiss the Amended Complaint.

Dated: New York, New York
       February 23, 2007

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
    Jonathan I. Blackman (JB 3846)
    Carmine D. Boccuzzi (CB 2177)

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for the Republic of Argentina

Of Counsel:
   Christopher P. Moore (CM 4936)

---

[12] Though Chase Manhattan Trustees Limited was designated as the Trustee for notes issued pursuant to the EMTN Programme, see Trust Deed (opening paragraph) (Ex. B), the current Trustee is Bank of New York.

[13] The Republic has moved to dismiss other EMTN Bond claims for the same reason. See e.g., GMO Emerging Country Debt L.P. v. Republic of Argentina, 05 Civ. 10380 (TPG); GMO Emerging Country Debt Fund v. Republic of Argentina, 05 Civ. 10383 (TPG); Barboni v. Republic of Argentina, 06 Civ. 5157 (TPG); Dussault v. Republic of Argentina, 06 Civ. 13085 (TPG)